HICKEY, Appellant,

v.

**OHIO STATE MEDICAL BOARD et al., Appellees.**

[Cite as *Hickey v. Ohio State Medical Bd.* (1989), 62 Ohio App.3d 182.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–769.

Decided April 27, 1989.

*Jane M. Varga,* for appellant.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Cheryl J. Nester,* for appellees.

WHITESIDE, Judge.

Appellant, Mary Catherine Hickey, M.D., appeals from a decision of the Franklin County Court of Common Pleas, affirming a decision of the State Medical Board of Ohio, and raises the following assignments of error:

"1. The Trial Court erred in upholding the denial of the Medical Board of endorsement licensure to Dr. Hickey where the order of the State Medical Board is not supported by reliable and substantial evidence and is contrary to law.

"2. The Trial Court erred in upholding the denial of the Medical Board of endorsement licensure to Dr. Hickey where Dr. Hickey attended a medical school listed in the W.H.O. and where Dr. Hickey exceeded the clinical and academic requirements of the Fifth Pathway Program."

Appellant submitted an application for a medical license to the State Medical Board of Ohio. At the time, appellant was licensed to practice medicine in the state of Virginia and was applying for licensure in Ohio by endorsement as provided by R.C. 4731.29 and Ohio Adm.Code 4731–3–18.

Appellant, a United States citizen, attended medical school at the Universidad Autonoma del Ciudad Juarez in Chihuahua, Mexico. After receiving her degree of doctor of medicine from that university in June 1979, appellant participated in a one-year internship in Cleveland and a three-year residency in

neurology, also in Cleveland. Appellant passed the FLEX examination (Federation Licensing Examination) in Virginia.

The State Medical Board of Ohio denied appellant's application for licensure on the basis that she did not meet the requirements of R.C. 4731.09. The Franklin County Court of Common Pleas upheld the board's order.

■ The authority of a court of common pleas to review an order of an administrative agency under R.C. 119.12 is limited to a decision as to whether the order is supported by reliable, probative and substantial evidence and is in accordance with the law. *Dept. of Liquor Control v. Santucci* (1969), 17 Ohio St.2d 69, 46 O.O.2d 402, 246 N.E.2d 549. Evidentiary findings of the agency are to be given deference and the trial court may not substitute its judgment for that of the agency, but does engage in a limited weighing of the evidence. *University of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265.

Appellant attempted to obtain an Ohio medical license by endorsement of her Virginia medical license. R.C. 4731.29(A) requires, in pertinent part:

"When a physician or surgeon licensed by the licensing department of another state, * * * the state medical board may, in its discretion, * * * issue to him a certificate to practice medicine or surgery * * * without requiring the applicant to submit to examination, provided he meets the requirements for entrance as set forth in * * * 4731.09 * * * of the Revised Code."

The State Medical Board of Ohio denied appellant's application for licensure on the basis of R.C. 4731.09,[1] finding that appellant did not meet any of the five alternate routes or "pathways" defined by Ohio Adm.Code 4731-3-16(A): (1) a diploma from a United States medical school in good standing; (2) a United States citizen who attended a foreign medical school and has the full right to practice medicine in a foreign country, and holds a diploma or license approved by the state board; (3) a graduate of a foreign medical school holding a diploma approved by the state board and who meets specified post-doctoral training requirements; (4) a foreign-born graduate of a foreign medical school who has a full right to practice medicine and surgery in a foreign country and meets specified post-doctoral training requirements; and (5) a United States citizen who attended a foreign medical school listed in the World Health Organization's Directory of Medical Schools ("WHO"), but who does not hold a full right to practice in a foreign country provided certain additional standards are met. Both parties agree that the requirements of the

---

1. Applicable here is R.C. 4731.09 as it read prior to the amendments effective March 17, 1987 and April 2, 1987, since the application was filed March 12, 1987. See 135 Ohio Laws, Part II, 1023.

first, second and fourth pathways have not been met by appellant. At issue is the third pathway prescribed by the requirements of Ohio Adm.Code 4731–3–16(A)(3), and the fifth pathway prescribed by R.C. 4731.09(B) and Ohio Adm.Code 4731–3–16(A)(5) as they existed on March 12, 1987, the date of appellant's application.

■ Although R.C. 4731.09(A) delineates three pathways, none of which applies to appellant, Ohio Adm.Code 4731–3–16(A)(3), as it appeared at that time, sets forth what the State Medical Board refers to as a separate pathway, which it terms the third pathway, and states in pertinent part:

"He is a graduate of a foreign medical school who holds a diploma approved by the board and has completed twenty-four months of post-doctoral training in an approved hospital in the United States, or its equivalent, as determined by the board. * * * The approved diploma must grant the degree of doctor of medicine or its equivalent. * * * "

In other words, appellant (1) must be a graduate, (2) have a diploma from a foreign medical school approved by the board, and (3) have completed twenty-four months of post-doctoral training in an approved hospital to meet the requirements of this pathway.

Although the issue is not raised by either party, Ohio Adm.Code 4731–3–16, at the time of appellant's application, has been found to be invalid. This court in *Hyde v. State Medical Bd.* (1986), 33 Ohio App.3d 309, 515 N.E.2d 1015, stated that R.C. 4731.09 does not contain any express language that would give the board the authority to promulgate rules and regulations as the board finds necessary to effect the purpose of that section. Consequently, the rule adopted pursuant to R.C. 4731.09 (Ohio Adm.Code 4731–3–16) was found in *Hyde, supra,* to have been improperly adopted and, therefore, invalid.[2]

This third pathway, therefore, based on an invalid rule, is not open to appellant unless it is also contained in R.C. 4731.09 as it existed on March 12, 1987. R.C. 4731.09 contains such a pathway implicit in R.C. 4731.09(B)(3). In other words, both the third and fifth pathways are based upon the same statutory provision and are merely different methods of applying that provision, R.C. 4731.09(B)(3).

The board's decision that appellant did not meet the requirements of pathway three, as set forth under Ohio Adm.Code 4731–3–16(A)(3), is not supported by reliable, probative and substantial evidence and is contrary to law.

---

**2.** The board has subsequently acquired rulemaking authority. See R.C. 4731.05, effective March 17, 1987.

■ The board relied on the hearing examiner's report which stated that appellant was "* * * ineligible to follow the third pathway to licensure for the reason that she does not hold a diploma from a foreign medical school *approved by the Board.* * * * "

Prior to the date of filing of the instant application, the board, on December 7, 1983, after consideration of a survey completed by the Universidad Autonoma del Ciudad Juarez, by unanimous vote, found the diploma of the Universidad Autonoma del Ciudad Juarez to be unacceptable and said school not to be in good standing with the board. In other words, the hearing examiner based his decision on board approval of the university at the time of appellant's application for Ohio licensure, rather than at the time she received her M.D. degree in 1979. (See R.C. 4731.09[A], which specifically provides in another context that good standing is to be determined as of the time the diploma was issued.) There is sufficient evidence in the record that the university was listed in WHO at the time of appellant's graduation from that university in 1979.

Neither R.C. 4731.09 nor Ohio Adm.Code 4731-3-16 defines "board approval" nor do they designate whether board approval of a university refers to approval at the time an applicant *graduates* from a university, at the time an applicant *applies* for licensure, or the time an application is *reviewed* by the board. To deny licensure upon the premise that the university must have board approval at the time the application is submitted is unreasonable since it bears no apparent rational relationship to any proper purpose.

The important factor is whether a university is maintaining its standards during the period in which a student is enrolled. If so, it is irrelevant whether the standards of the university fail at a later date as long as the school was accredited or recognized during that period of time during which a student receives his or her training. Accordingly, the board's decision to deny appellant's licensure based on the fact that the Universidad Autonoma del Ciudad Juarez was not recognized by the board subsequent to December 7, 1983, was both unreasonable and not in accordance with the law. The board's determination was apparently based upon the fact the university was not listed in the WHO directory for 1970, which is an unreasonable and unlawful basis since it was listed in 1979. R.C. 4731.09 requires that the listing be related to the time the diploma was received.

Appellant also contends that she has met the requirements of the fifth pathway.

■ The fifth route to licensure or the fifth pathway in Ohio is available to a United States citizen who attended a foreign medical school which is listed in the WHO directory, but who does not hold a full right to practice medicine in

the foreign country in which she attended medical school, provided that she meets the following requirements set forth in R.C. 4731.09(B) as it read at the time of appellant's application:

"(1) The applicant successfully completed all of the formal requirements of the foreign medical school except internship or social service requirements.

"(2) The applicant attained on a qualifying examination acceptable to the state medical board a score satisfactory to a medical school approved by the liaison committee on medical education.

"(3) The applicant successfully completed one academic year of supervised clinical training at a hospital affiliated with a medical school approved by the liaison committee on medical education and, subsequent to that year, one year of internship or residency at a hospital in the United States having an internship or residency program approved by the state medical board." See 135 Ohio Laws, Part II, 1023, 1024.

R.C. 4731.09(B) requires, in addition, that the applicant has studied medicine outside the United States at a school listed by WHO. The foreign university in question was listed in the 1979 WHO directory. It was not in accordance with the law to require that the appellant's university be listed in the WHO directory either prior to 1970 or at the time of appellant's application for licensure. Rather, the appropriate time is the period during which appellant attended the subject university and received her diploma. Thus, appellant meets the first enumerated requirement of R.C. 4731.09(B) and by passing both FLEX and the Educational Commission for Foreign Medical Graduates ("ECFMG") examinations.

As to the third requirement, in its order of October 16, 1987, the State Medical Board of Ohio found that "[f]rom August of 1978 until the end of May, 1979, Petitioner completed her clinical rotation requirements for the Universidad Autonoma del Cuidad Juarez at the Mt. Sinai Hospital, Cleveland, Ohio and at the Cleveland Psychiatric Institute. Mt. Sinai Hospital is affiliated with Case Western Reserve Medical School." However, the board found that after receiving her degree from the university, appellant took no further medical training at a United States medical school, nor did she participate in a fifth pathway training program. This is inaccurate since appellant did complete twenty-four months' training consisting of internship at Saint Luke Hospital and residency at the Cleveland University Hospital and, apparently, is ineligible for so-called fifth pathway training because she is over-qualified, having passed the ECFMG examination and obtained an ECFMG certificate. Accordingly, appellant has met both the requirements for the fifth pathway and the requirements for the third pathway to licensure.

Appellant, in her brief, also refers to Ohio Adm.Code 4731–3–18(I), which allows the board to refuse an applicant endorsement who has not been engaged in any of the following activities during the two years immediately prior to the date of application: (1) the act of practice of medicine or surgery, (2) the taking of post-graduate training accredited by the liaison committee on graduate medical education or approved by the American Osteopathic Association, or (3) the attendance of a state student at a medical or osteopathic school in good standing as defined by the board. The hearing examiner had previously found that appellant was not engaged in any of the activities during the two-year period immediately prior to March 12, 1987, the date of filing of her instant application and concluded that petitioner's application should have been denied on that basis as well.

However, the state board based its opinion only on the finding that appellant has not traveled any of the pathways to licensure in effect on the date of the filing of her application (March 12, 1987), see page 18 of the order of the State Medical Board. Excerpts from the minutes of the State Medical Board meeting of October 14, 1987, reflect that several members of the board disagreed with the hearing examiner's interpretation of Ohio Adm.Code 4731–3–18(I), even though several members stated that it was their understanding that the two-year rule did not mean that the applicant must have worked for twenty-four consecutive months and simply states that the months did not have to be consecutive. Accordingly, the board did not predicate its denial of licensure upon Ohio Adm.Code 4731–3–18(I), but, instead, at least tacitly found compliance therewith.

For the foregoing reasons, appellant's assignments of error are sustained and the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court with instructions to reverse the decision of the Ohio State Medical Board, and to remand the cause to that board for reconsideration of appellant's application in accordance with law consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

STRAUSBAUGH and YOUNG, JJ., concur.